**UNITED STATES of America ex rel. Angelo Frank BRUNO, Petitioner,**

v.

**James M. SWEET, Acting Commissioner in Charge, Immigration and Naturalization Service, Kansas City, Missouri, Respondent.**

No. 9797.

United States District Court
W. D. Missouri, W. D.
Aug. 23, 1955.

Richard P. Shanahan, Kansas City, Mo., for petitioner.

Edward L. Scheufler, U. S. Dist. Atty., and Horace Warren Kimbrell, Asst. U. S. Dist. Atty., Kansas City, Mo., for respondent.

WHITTAKER, District Judge.

In this habeas corpus proceeding, petitioner challenges the legality of an order, made July 12, 1954, by special inquiry officer, Jerome T. McGowan, of the Immigration and Naturalization Service, affirmed on appeal, on March 4, 1955, by the Board of Immigration Appeals, finding, after hearing pursuant to warrant of arrest served upon petitioner January 16, 1948, that petitioner (1) last entered the United States at Detroit, Michigan, on January 15, 1948, without having a valid immigration visa, and, therefore,

illegally, and (2) that, while an immigrant for permanent residence in the United States, he pleaded guilty in the District Court of the United States for the Western District of Missouri, to the fifth count of an indictment returned August 15, 1934 (in cause No. 12637 in that Court), charging him with the sale of narcotics in violation of the law, and resulting in his sentence by that Court, on October 24, 1934, to a term of two years' imprisonment, and, accordingly, ordering petitioner deported to his native Italy, and challenging the legality of a warrant for his deportation accordingly, issued by the District Director of the Immigration and Naturalization Service on March 15, 1955.

Issue being joined, the cause was heard by the Court on June 28, 1955, and, at the conclusion of the evidence, the parties were given leave to file, and they have now filed, briefs, in support of their respective positions, which I have considered.

The evidence, stated succinctly, shows that petitioner, then five years old, first entered the United States in 1907 at the port of New York, for permanent residence; that on October 24, 1934, he was convicted, in the United States District Court for the Western District of Missouri, upon a plea of guilty, of selling narcotics in violation of the law, and was, therefore, sentenced by that Court to a term of two years in the United States Penitentiary at Leavenworth, Kansas; that neither the District Attorney nor the Court made any recommendation to the Immigration and Naturalization Service against deportation, within thirty days allowed therefor by Section 155(a), Title 8 U.S.C.[1]—though on July 10, 1943, the District Attorney (with the endorsed concurrence of the Judge of the Court), and on November 21, 1944, the Judge of the Court, wrote the Immigration Service, recommending against deportation, the latter saying that he had not known within the thirty-day period, or until recently before his letter, that petitioner was an alien; that while petitioner was still serving his sentence at the Leavenworth prison, and when about to be released therefrom, a warrant of arrest was caused to be issued by the service for petitioner, on May 21, 1936, charging that he was subject to deportation because of (1) entry into the United States from Canada in 1933 or 1934, after a visit of about one hour in that country, by false and misleading statements that he was an American citizen, and (2) his conviction of October 24, 1934, for the illegal sale of narcotics, as stated; pursuant to that warrant, and after hearing, the Board of Review, on June 22, 1936, ordered that petitioner be deported to Italy, and on July 16, 1936, warrant of deportation accordingly was issued; pending further proceedings in that matter, petitioner was admitted to bond, which was breached by his unexcused departure and the penalty was forfeited; in April, 1943, he was located in Detroit (through routine fingerprinting by an employer), when he was again apprehended, but released on $2,500 bond, by immigration authorities; that pursuant to further proceedings initiated by petitioner, the Board of Immigration Appeals, on July 1, 1944, directed that the proceedings be reopened and the outstanding warrant of deportation, issued on July 16, 1936, be withdrawn, to permit petitioner to apply for discretionary relief under Section 19(c) of the Act of 1917,[2] and it granted petitioner voluntary departure, with preexamination, and ordered that petitioner be admitted to the United States under the seventh proviso of Section 3 of the Act of 1917,[3] solely with respect to the ground of exclusion arising from his narcotics conviction and sentence of October 24, 1934; that having previously

---

1. Now Immigration and Nationality Act, § 241(a), 8 U.S.C.A. § 1251(a).

2. Now Immigration and Nationality Act, § 1254(1, 2), 1351.

3. Now Immigration and Nationality Act, § 212, 8 U.S.C.A. § 1182.

arranged an appointment for January 15, 1948, with the American consul in Windsor, Canada, for the purpose of obtaining from him a lawful visa to the United States; petitioner, for the purpose of keeping that appointment, on that date, attempted to enter Canada at Windsor, but the Canadian authorities refused to admit him, and he returned to Detroit, but, later, on the same day, he entered Canada, at Windsor, over the International Bridge, illegally, by stating that he was a United States citizen, and was arrested by the Canadian immigration officials and fined $50 and deported to the United States as "a Canadian deport"; that upon his being returned to Detroit, a new warrant of arrest, dated the next day, January 16, 1948, was issued for him, and he was served and taken into custody thereunder on that day. That warrant constitutes the basis of the proceeding upon which he has been ordered deported, and charged that he was subject to deportation because (1) he had entered the United States (on January 15, 1948) as an immigrant and not in possession of a valid immigration visa, and not exempted by law from having one, and (2) because of his narcotics conviction and sentence of October 24, 1934.

That, thereafter, on November 3, 1949, a hearing was had, pursuant to said warrant, before presiding inspector, Turner A. Cochran, at Kansas City, but not under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., and before any findings or order had been made in that proceeding, the Supreme Court of the United States decided the case of Wong Yang Sung v. McGrath, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, holding that deportation hearings were subject to the Administrative Procedure Act, and, thereafter, on April 15, 1954, a new hearing was held, upon said outstanding warrant of arrest on January 16, 1948, before special inquiry officer, Jerome T. McGowan, at Kansas City, at which the evidence adduced was fully heard, and at which hearing petitioner filed an application for "Suspension of deportation", dated April 15, 1954; that thereafter, on July 12, 1954, said special inquiry officer, McGowan, filed his memorandum opinion, findings of fact, conclusions of law, and order, finding that petitioner had (on January 15, 1948) unlawfully entered the United States as an immigrant (at Detroit, Michigan) without possessing a lawful visa, and without being exempted from having one, and had been convicted and sentenced, on October 24, 1934, at Kansas City, for selling narcotics, and found that petitioner was deportable upon those grounds, and that his was not a proper case for the grant of discretionary "suspension of deportation", and denied discretionary relief "as a matter of administrative discretion", and ordered petitioner deported.

Petitioner appealed to the Board of Immigration Appeals, and, thereafter, on March 4, 1955, that Board, by opinion and order in evidence, dismissed the appeal, and affirmed the findings, conclusions and order of special inquiry officer, McGowan, of July 12, 1954; and on March 15, 1955, a warrant of deportation of petitioner was issued. Soon thereafter this petition for writ of habeas corpus was filed, challenging the legality of said deportation proceedings, order and warrant.

There is no dispute in the evidence concerning the foregoing recital of facts, and I find them to be the facts.

■ Though petitioner, in his petition for the writ of habeas corpus, complained that "he is not deportable for his conviction in 1934 since such conviction was not for a violation of a crime (sic) involving moral turpitude" and was, therefore, not a deportable offense when committed, and that to apply Section 1251(a) (11), Title 8 U.S.C.A. of the 1952 Act, to him would be to subject him to the operation of an ex post facto law, his brief recognizes the lack of merit in that point in the light of the recent decision of the Supreme Court in Marcello v. Bonds, 349 U.S. 302, 75 S.

Ct. 757, and he abandons the point, which, I may say, was wholly without merit, because Section 1251(a) (11), Title 8 U.S.C.A. expressly provides that "(a) Any alien in the United States * * * shall * * * be deported who—* * * (11) is, * * * or who *at any time* has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs * * * *", and the Supreme Court, in the Marcello case, has held that statute to be constitutionally valid according to its terms.

■ Petitioner's next point is, as I understand it, that the action of the Board of Immigration Appeals of July 1, 1944, directing that the then pending deportation proceedings be reopened to permit petitioner to apply for discretionary relief, and the Board's action of June 13, 1945, ordering that the outstanding warrant of deportation, issued July 16, 1936, be withdrawn, constituted a "final adjudication", vesting petitioner with a non-deportable status, as respects his narcotics conviction of October 24, 1934, and that this "final adjudication" and the "savings clause" of the 1952 Act, Section 1101 Note, Title 8 U.S.C.A., reading, "Nothing contained in this Act, *unless otherwise specifically provided therein* shall be construed to affect the validity of any * * * proceeding which shall be valid at the time this Act shall take effect, * * * *", precludes his deportation, on the ground of his narcotics conviction of October 24, 1934. The answer is that the action of the Board of Immigration Appeals referred to did not constitute a "final adjudication" of anything, and did not vest petitioner with a non-deportable status in respect of his narcotics conviction of 1934, but merely reopened the then pending deportation proceeding and withdrew the then outstanding warrant of deportation of July 16, 1936, and granted petitioner voluntary departure with preexamination in order that he might exercise the privilege—not a right—of trying to obtain a lawful visa from the Canadian authorities, which he never did. Therefore, he possessed no right or status for the saving clause to save to him. Moreover, it will be noted that the savings clause contains the phrase which I have italicized above, reading "unless otherwise specifically provided", and it is specifically provided in that Act, Section 1251(a) (11), Title 8 U.S.C.A., that one "who at any time has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs," is deportable. It is thus clear that there is no merit in this one of petitioner's points.

■ Petitioner's next point is that he did not, in any real sense, leave the United States when he went to Windsor, Canada, on January 15, 1948, to keep his appointment with the American consul there in the hope of being able to secure a valid visa to the United States, and that he did not, in any real sense, reenter the United States when he was returned by Canadian officials to Detroit on that day as "a Canadian deport", and that the ground for his deportation that he unlawfully entered the United States on January 15, 1948, without a lawful visa, and without being excused from having one, is not supported by the evidence. All the evidence is, and he admits, that he went to Canada on that occasion intentionally and purposefully, and that his reentry into the United States on the same day was as a Canadian deport and without lawful visa, and there is no escape of the finding and conclusion of the special inquiry officer and the Board of Immigration Appeals that he did enter the United States on that day in violation of the law, and their findings to that effect are amply supported by the evidence.

■ Petitioner's next, and last, point is that he was entitled to suspension of deportation under his application therefor of April 15, 1954, and that there was gross abuse of discretion in the de-

nial of that application. Section 1254, Title 8 U.S.C.A., vests the Attorney General with a discretion to suspend deportation in the circumstances there set forth. The only circumstances that could be said to be applicable to petitioner are contained in paragraph (a) (5) of that Section, and it authorizes suspension of one, like petitioner, who is deportable under paragraph (a) (11) of Section 1251, Title 8 U.S.C.A., for an act committed subsequent to entry into the United States, provided he has been physically present in the United States for a continuous period of not less than ten years immediately preceding the application for such relief. Here petitioner had not been physically present in the United States for a continuous period of ten years or more, preceding his application for this relief, but had broken his residence by going to, and unlawfully returning from, Windsor, Canada, on January 15, 1948, and I believe that, in those circumstances, the attorney general did not have a discretion to grant petitioner's application for suspension of deportation, but, however that may be, the matter of the grant, or the withholding of the grant, of suspension of deportation is, by the statute, made to depend upon the "discretion" of the attorney general, and his failure to exercise that discretion favorably to petitioner presents, in my view, an administrative, and not a judicial, question. At all events, there is no evidence upon which I could find an abuse of discretion.

This disposes of all of the contentions raised here by petitioner, and it follows, as a matter of law, that petitioner has not shown any illegality or legal insufficiency in the deportation proceedings, or in the findings, conclusions or deportation order of the immigration officials, and, hence, has not shown himself entitled to the prayed writ of habeas corpus, and it must be denied.

It is, therefore, ordered and adjudged by the court that petitioner's petition for a writ of habeas corpus be, and it is hereby, denied and dismissed.